IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| US INVENTOR INC., TINNUS ENTERPRISES, LLC, 360 HEROS, INC, RAMZI MAALOUF, LARRY GOLDEN, WORLD SOURCE ENTERPRISES, LLC, E-WATCH, INC, | § § § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:21-CV-00047-JRG |
| DREW HIRSHFELD, IN HIS OFFICIAL CAPACITY PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, UNITED STATES PATENT AND TRADEMARK OFFICE, | § § § § § § § § § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs US Inventor Inc. ("US Inventor"), Tinnus Enterprises, LLC, 360 Heros, Inc., Ramzi Maalouf, Larry Golden, World Source Enterprises, LLC, and E-Watch, Inc.'s (collectively, the "Patent Owner Plaintiffs") (together with US Inventor, "Plaintiffs") Motion for Entry of a Preliminary Injunction Against the Acting Director of the United States Patent and Trademark Office (the "Motion for Preliminary Injunction"). (Dkt. No. 7). Also before the Court is the Motion to Dismiss (Dkt. No. 19) filed by Defendant Drew Hirshfeld, sued in his official capacity as Acting Director of the United States Patent and Trademark Office (the "Director"). The Court held a hearing on both motions on July 1, 2021. After careful consideration of the arguments and authorities presented by the parties, the Court is of the opinion that the Motion

to Dismiss should be **GRANTED**. Accordingly, the Court does not reach the merits of the Motion for Preliminary Injunction and dismisses this action for lack of subject-matter jurisdiction.

I.  **INTRODUCTION**

When Congress passed the America Invents Act ("AIA") in 2011, it established an executive adjudicatory body called the Patent Trial and Appeal Board ("PTAB") as a constituent component of the U.S. Patent and Trademark Office ("PTO"), an agency within the Department of Commerce. 35 U.S.C. § 6(a); *United States v. Arthrex, Inc.*, No. 19-1434, 594 U.S. ___, slip op. at 3 (2021). The PTAB sits in panels of three and can decide the patentability of inventions. *Id.* at 4; *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 135, 1373–74 (2018). As a part of the AIA, Congress established several procedures through which the validity of an issued patent can be challenged before the PTAB, including *inter partes* review ("IPR") and post-grant review ("PGR"). There are some differences between IPRs and PGRs, but both are adversarial proceedings that permit parties other than the patentee to challenge the validity of an issued patent.

Both IPRs and PGRs have two phases: an institution phase and a trial phase. In the institution phase, the patent challenger and the patentee contest whether the PTAB, exercising the Director's authority, should institute a trial on the merits. At this stage in an IPR, the patent challenger must persuade the PTAB panel that "there is a reasonable likelihood that the petitioner would prevail" on at least one challenge leveled in the petition. 35 U.S.C. § 314(a). At the same stage in a PGR, the patent challenger must persuade the panel that "it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable." 35 U.S.C. § 324(a). If the panel determines that the patent challenger has not made the required threshold showing, the PTAB denies institution and the proceeding ends without a trial phase. *See* §§ 314(a), 324(a). If the panel

determines that the standard has been met, the PTAB may institute a trial on the merits, which ultimately culminates in a final written decision either confirming or rejecting the patentability of the challenged patent claims. *See* §§ 318(a), 324(a). The final written decision also creates an estoppel of any grounds that the patent challenger raised or could reasonably have raised in the proceeding. §§ 315(e), 325(e). A final written decision is subject to appellate review at the U.S. Court of Appeals for the Federal Circuit. 35 U.S.C. §§ 141–44, 319, 329.

Even if the threshold showing is met, the PTAB is not required to institute a trial. Under §§ 314(a) and 324(a), "the agency's decision to deny a petition is a matter committed to the Patent Office's discretion." *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2140 (2016) (IPRs); *see also Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1049 (Fed. Cir. 2017) (PGRs). The decision to institute (or not) is not a "final" agency decision and is not reviewable. *Cuozzo*, 136 S. Ct. at 2140. Therefore, notwithstanding any apparent merits in a petition for review, the PTAB (acting on behalf of the Director) may exercise its discretion to deny institution of a trial.

Several recent decisions from PTAB panels have explored the scenarios in which "discretionary denials" are appropriate. In *General Plastic Industrial Co., Ltd. v. Canon Kabushiki Kaisha*, IPR2016-01357, Paper 19 (P.T.A.B. Sep. 6, 2017), a panel announced factors to consider in the case of serial IPR petitions. In *Advanced Bionics, LLC v. MED-EL Elektromedizinische Geräte GmbH*, IPR2019-01469, Paper 6 (P.T.A.B. Feb. 13, 2020), a panel discussed considerations for denying institution under § 325(d) based on arguments or prior art that had previously been presented to the Patent Office. In *NHK Spring Co. v. Intri-Plex Techs., Inc.*, IPR2018-00752, Paper 8 (P.T.A.B. Sept. 12, 2018) and *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (P.T.A.B. Mar. 20, 2020), panels considered discretionary denials in view of parallel district court litigation over the challenged patents. The *Fintiv* panel ultimately announced a six-

factor test for when denial is appropriate. *Fintiv*, IPR2020-00019, Paper 11 at 6. Each of these decisions has since been designated by the Director as "precedential," which renders them "binding Board authority in subsequent matters involving similar facts or issues." *See* PTAB, STANDARD OPERATING PROCEDURE 2 (REV. 10) at 11 ("SOP 2"), https://www.uspto.gov/sites/default/files/documents/SOP2%20R10%20FINAL.pdf.

Against this backdrop, Plaintiffs initiated the above-captioned action against the Director seeking both declarative and injunctive relief. Plaintiffs generally allege that the Director's designation of such decisions as precedential constitutes unlawful rulemaking without the formal notice and comment required under the Administrative Procedures Act ("APA"), 5 U.S.C. § 553. (Dkt. No. 6). At a high level, Plaintiffs argue that 35 U.S.C. §§ 316(a)(2) and 326(a)(2) mandate that the Director "*shall* prescribe *regulations* . . . setting forth the standards for the showing of sufficient grounds to institute a review" under §§ 314(a) and 324(a)–(b). (Dkt. No. 7 at 5). Thus, Plaintiffs argue, the AIA requires the Director to abide by the APA's regulation framework—notice-and-comment rulemaking—when determining the standards for discretionary §§ 314(a) and 324(a) denials. It follows, as Plaintiffs would have it, that the Director was not free to make rules outside of this framework by simply designating panel opinions as precedential.

Plaintiffs bring two claims. Count I alleges unlawful agency inaction under 5 U.S.C. § 706(1) for withholding notice-and-comment rulemaking. (Dkt. No. 6 ¶¶ 80–83). Count II alleges unlawful agency action under 5 U.S.C. § 706(2) for rulemaking without the required notice and comment. (*Id.* ¶¶ 84–87). Plaintiffs request the Court to:

    1.    Declare adjudicative rulemaking on discretionary considerations for the "sufficient grounds" decision to be unlawful;

    2.    Compel notice-and-comment rulemaking on discretionary considerations for the "sufficient grounds" decision, as Congress has mandated;

3. Preliminarily and permanently enjoin the Director from granting institution in any AIA patent trial pending completion of compelled rulemaking (at which point properly promulgated rules will govern Board panel institutions and adjudications);

4. Preliminarily and permanently enjoin the Director from requiring Board panels to treat any prior adjudicated Board decision analyzing discretionary considerations as "precedential" in any upcoming decision, pending completion of compelled rulemaking (at which point properly promulgated rules will govern Board panel institutions and adjudications); [and]

5. Award Plaintiffs their costs and attorney's fees and expenses as allowed by law[.]

(*Id.* at 25). Plaintiffs have also filed a Motion for Preliminary Injunction. (Dkt. No. 7).

The Director has filed a Motion to Dismiss. (Dkt. No. 19). He argues that the Court lacks subject-matter jurisdiction because the Plaintiffs do not have standing to pursue these claims. (*Id.* at 7–13). He also argues that Plaintiffs have failed to state a claim, both due to a failure to exhaust administrative remedies and a failure on the merits. (*Id.* at 13–20). As standing is jurisdictional, the Court addresses the Motion to Dismiss first. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998). Having considered the arguments and authorities presented in the briefing and in oral argument, the Court agrees with the Director that Plaintiffs do not have standing to pursue this action. Accordingly, the Court does not reach the merits of Plaintiffs' Motion for a Preliminary Injunction. *See id.* at 94 ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868))).

## II. LEGAL STANDARDS

The "irreducible constitutional minimum" of standing has three requirements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560. First, the plaintiff must have suffered an "injury in fact." *Id.* An injury in fact is an "invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation

5

marks omitted). Second, the injury must be fairly and causally traceable to the conduct of the defendant. *Id.* Third, it must be likely that the injury would be redressed by a favorable decision. *Id.* at 561.

Where the alleged injury is a violation of a procedural right, the plaintiff must show that the violated procedure affects some underlying concrete interest. *Lujan*, 504 U.S. at 573 n.8; *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing. Only a 'person who has been accorded a procedural right to protect *his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy.'" *Id.* (quoting *Lujan*, 504 U.S. at 572 n.7) (emphases in original).

An organization can seek relief under either an associational standing theory or an organizational standing theory. Associational standing has three requirements: first, that the association's members independently have Article III standing; second, that the interests the association seeks to protect are germane to its purpose; and third, that neither the claim asserted nor the relief requested requires participation of the individual members. *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006). Organizational standing allows an organization to establish injury in fact if the organization "diverted significant resources to counteract the defendant's conduct," such that the defendant's conduct significantly and perceptibly impaired the organization's ability to provide its activities. *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010). The impairment must be concrete and demonstrable, with a consequent drain on the organization's resources. *Id.*

## III. DISCUSSION

The Director argues that neither the Patent Owner Plaintiffs nor US Inventor have identified any legally cognizable injury in fact that would give rise to standing. (Dkt. No. 19 at 8–9). He also argues that US Inventor cannot establish organizational standing. (*Id.* at 11). Plaintiffs respond, identifying several alleged injuries they contend would support standing. (Dkt. No. 20 at 4). The Court, having considered Plaintiffs' several theories, agrees with the Director. For the reasons stated herein, the Court is not persuaded that Plaintiffs have established Article III standing.

### A. Plaintiffs Have Not Established a Legally Cognizable Injury in Fact

Plaintiffs allege they are injured by the Director's failure to regulate with notice and comment. The Patent Owner Plaintiffs argue that their patent rights "are at greater risk when validity disputes get decided in IPR or PGR rather than Article III court proceedings," asserting a higher invalidation rate at the PTAB than in District Courts. (Dkt. No. 20 at 5). According to the Patent Owner Plaintiffs, the risk of harm to their patent rights are increased when there are fewer "off-ramps" to institution of AIA trials. (Dkt. No. 24 at 1). Plaintiffs also argue they were denied a "seat at the table" during the creation of a discretionary denial framework because institution decisions are not appealable. (*Id.* at 6).

Plaintiffs allege a procedural injury. As such, they must show that the procedures violated would protect some underlying concrete interest. *Summers*, 555 U.S. at 496. On the facts presented, the Court is not persuaded that Plaintiffs have met their burden. The Patent Owner Plaintiffs have not identified an interest that is concrete, as opposed to speculative and abstract. The decision not to institute an AIA trial does not affect any substantive rights. In general, as the Supreme Court and the Federal Circuit have stated, patent challengers and patentees at the PTAB

have no right either to institution or to denial of institution. *See* § 314(d) (institution decision is nonappealable); *Cuozzo Speed*, 136 S. Ct. 2131, 2140 (2016) ("The Patent Office's decision to initiate inter partes review is 'preliminary,' not 'final.' And the agency's decision to deny a petition is a matter committed to the Patent Office's discretion."); *Thryv, Inc. v. Click-to-Call Techs. LP*, 140 S. Ct. 1367, 1373 (2020) ("a party generally cannot contend on appeal that the agency should have refused 'to institute an inter partes review.'").

For patentees, the notion of a concrete interest in discretionary denials of AIA petitions is particularly tenuous. Although the institution decision is a step on the road to invalidation, there is no dispute that discretionary denials under §§ 314(a) and 324(a) necessarily occur in situations where the PTAB has proper authority to institute. There is also no apparent dispute that the PTAB can exercise that discretion, at least on a panel-by-panel basis. As a result, the factors considered in the challenged PTAB decisions are neither dispositive nor exclusive. In the case of a discretionary denial, there is no harm to patentees because the proceeding ends and the patent rights are unaffected; the status quo is maintained. Plaintiffs contend they are deprived of additional "off-ramps" to avoid IPRs and PGRs, but Plaintiffs cannot claim some concrete right or interest in having the PTAB panels exercise their discretion in Plaintiffs' desired manner. Such would run contrary to the very notion of discretion.

The Patent Owner Plaintiffs also identify several other purported "harms" in their Amended Complaint: being "forced to respond" to AIA petitions for review (Dkt. No. 6 at ¶¶ 14–19); that petitions would have been "more clearly deniable" with "lawful regulations" on discretionary denials (*Id.* ¶¶ 18–21); the cost of litigating before the PTAB (*id.* ¶¶ 35–36, 48, 60); facing threat of IPR without any parallel infringement allegations or litigation (*Id.* ¶ 38); a lack of technical expertise among PTAB judges (*Id.* ¶ 50); and decreased confidence in the patent system

(*Id.* ¶¶ 51, 56). These complaints about the PTAB and AIA procedures bear no nexus either to the Director's alleged failure to seek notice and comment or to the relief requested in this suit. None of these alleged injuries, even if assumed to be true, suffice to establish standing for the pleaded APA challenge.

The tenor of the Amended Complaint suggests that Plaintiffs take issue with the PTAB and the AIA procedures in general. This is confirmed by the broad relief sought by Plaintiffs: not only to declare the Director's actions to be unlawful, and not only to compel notice-and-comment rulemaking, but to enjoin *all* institutions of AIA trials in the interim. (Dkt. No. 6 at 25). Plaintiffs would have this Court enjoin the PTAB from conducting *any* IPRs or PGRs simply because of an alleged procedural violation in how it exercises its discretion not to act—an issue that only arises when the PTAB has the authority to act in the first place. It appears plain that Plaintiffs are ultimately complaining about the system which Congress established. That complaint is best addressed by Congress—not the Courts. For these reasons, the Court is not persuaded that the Patent Owner Plaintiffs have established Article III standing. Similarly, the Court is not persuaded that US Inventor would have associational standing by virtue of injury to the Patent Owner Plaintiffs.

### B. US Inventor Lacks Organizational Standing

Plaintiffs also argue that US Inventor has organizational standing to pursue these claims. US Inventor is described as an "advocacy, education and public outreach" organization "on matters of importance to individual inventors and small innovative businesses." (Dkt. No. 6 ¶ 11). Plaintiffs argue that US Inventor has "consume[d] time and resources" that it would not have if the PTO had lawfully promulgated regulations. (Dkt. No. 20 at 9). Additionally, US Inventor has now been "forced to advise its members that not participating in the U.S. patent system, reducing

investments in inventing, and/or to keeping their inventions secret may now (solely because of AIA trial reviews) be the best way forward for their situation." (*Id.* (quoting Decl. of Josh Malone, Dkt. No. 8-1 ¶ 26)). US Inventor "dedicated website resources and personnel time" to collecting public comments for dissemination to the Director. (*Id.* at 9–10). US Inventor member Josh Malone has "published commentary to inventors on topics germane to" the *Fintiv* and *General Plastic* decisions. (*Id.* at 10). And US Inventor has "filed a full-blown petition for rulemaking" before the PTO. (*Id.*). Plaintiffs argue that these resource expenditures support standing.

Plaintiffs analogize to *American Anti-Vivisection Society v. USDA*, 946 F.3d 615, 619 (D.C. Cir. 2020) [hereinafter *AAVS*]. In *AAVS*, the D.C. Circuit upheld an animal rights group's standing to challenge the USDA's failure to regulate the handling of captive birds. *Id.* at 619. As the USDA failed to issue guidance on proper handling of captive birds, the group "developed 'How To Guides,' 'webinars,' and 'informational pamphlets that are designed to help shelters and care facilities tend to the needs of birds.'" *Id.* The court, noting that such activities were not part of the group's normal expenditures, reasoned that the USDA's failure to act caused a drain on the group's resources. *Id.* The court further explained that the claim of standing was bolstered because the USDA was legally required to promulgate bird regulations. *Id.*

The Court does not agree with Plaintiffs that *AAVS* is analogous. In *AAVS*, the organization expended its resources to mitigate real world harms that arose as a result of the USDA's failure to promulgate required regulations. Such activities were not a part of the group's normal expenditures. Here, the harm that US Inventor allegedly diverted resourced to mitigate is intrinsic to the alleged procedural violation. *See City of Kyle*, 626 F.3d at 238–39; *contra OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("Here, by contrast [to *City of Kyle*], OCA is not a lobbying group. It went out of its way to counteract the effect of Texas's allegedly unlawful

voter-interpreter restriction—not with a view toward litigation, but toward mitigating its real-world impact on OCA's members and the public."). In other words, the harms that US Inventor claimed to remediate were not concrete and demonstrable, but were akin to a procedural harm in a vacuum. US Inventor is essentially arguing that it has been effectively harmed by pursuing its recognized mission and organizational purpose. US Inventor merely updated its website to inform its members and the public about PTAB developments, provided its opinions on those developments, and took action to seek changes that it favored. These actions are not, in a qualitative sense, the types of resource diversions that give rise to organizational standing. *See OCA-Greater Houston*, 867 F.3d at 611–12; c*f. City of Kyle*, 626 F.3d at 238–39 ("Plaintiffs have not explained how the activities described above, which basically boil down to examining and communicating about developments in local zoning and subdivision ordinances, differ from the HBA's routine lobbying activities."). If US Inventor was correct, any organization displeased with an agency's action could manufacture standing by expending some nominal amount of time and resources in the hopes of countering the agency's action. This cannot be the case, "for then the injury-in-fact requirement would pose no barrier." *OCA-Greater Houston*, 867 F.3d at 611 (citing *City of Kyle*, 626 F.3d at 233).

Additionally, US Inventor has not shown that these resource expenditures differ from its normal activities. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919–20 (D.C. Cir. 2015) ("an organization does not suffer an injury in fact where it 'expend[s] resources to educate its members and others' unless doing so subjects the organization to 'operational costs beyond those normally expended.'"); *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995) ("NTU cannot convert its ordinary program costs into an injury in fact."). Even assuming that US Inventor is correct that the Director improperly withheld notice-and-comment

rulemaking, it is wholly speculative whether the standards ultimately promulgated would be more favorable to US Inventor, less favorable to US Inventor, or the same. In such case US Inventor might have still advocated for its favored changes with no way of knowing whether the outcome would have improved, weakened, or left unchanged US Inventor's posture and position. The record presented does not suggest or support a finding that US Inventor's organizational activities have been perceptibly impaired.

Finally, US Inventor argues it has suffered an informational injury of the type that gave rise to standing in *FEC v. Akins*, 524 U.S. 11 (1998). (Dkt. No. 20 at 10–11). In *Akins*, the Supreme Court held that the plaintiffs had standing to challenge the FEC's classification of a political organization because the classification determined whether the organization was subject to public reporting requirements. *Id.* at 24–25. Thus, if the FEC's classification was incorrect, the plaintiffs were harmed by being deprived of information related to voting, "the most basic of political rights." *Id.* US Inventor, citing again to *AAVS*, argues that it was deprived of "Congressionally-mandated information that would be published in the form of agency regulations promulgated with notice and comment." (Dkt. No. 20 at 10–11).

The Court agrees with the Director that the bare procedural violation alleged does not give rise to a cognizable informational injury. In *AAVS*, the USDA wholly failed to regulate despite a statutory mandate to do so within the Animal Welfare Act. *AAVS*, 946 F.3d at 616–17. Plaintiffs here are not claiming that the PTO Director has entirely failed to regulate. Rather, Plaintiffs contend that *if* the Director wishes to regulate discretionary denials of AIA trial petitions, he must do so through notice-and-comment rulemaking. Unlike the Animal Welfare Act, the AIA contains no unqualified statutory mandate for the Director to issue any sort of guidance on the PTAB's exercise of discretion under §§ 314(a) and 324(a). Plaintiffs contend that they suffer from

"unclarity and opacity" (Dkt. No. 24 at 3), but they have not identified anything that is unclear or opaque about the PTAB panel decisions or the reasoning contained therein. The Director could undertake notice-and-comment rulemaking and ultimately adopt the same standards it has previously designated precedential. The Director could also withdraw the precedential designations and return to the default of panel-by-panel discretion, unguided by any factor tests, precedential opinions, or promulgated agency rules or policies. Either would render Plaintiffs' suit moot; neither results in any additional information about the applied standards themselves.

The Court is therefore not persuaded that US Inventor has established organizational standing, either based on diversion of resources or under an informational injury theory. US Inventor, like the Patent Owner Plaintiffs, has simply alleged an abstract procedural injury, which alone does not give rise to the right to sue.

## IV. CONCLUSION

For the reasons stated herein, the Court concludes that Plaintiffs have not established standing to pursue this action. Therefore, the Director's Motion to Dismiss is **GRANTED**. As the Court lacks subject-matter jurisdiction, Plaintiffs' Motion for a Preliminary Injunction is **DENIED**. It is hereby **ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE**.

The Clerk of Court is directed to **CLOSE** this case.

**So ORDERED and SIGNED this 13th day of July, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE